255 P.3d 730 (2011)
161 Wash.App. 550
Robert B. HIPPLE, Jr., Respondent,
v.
Deborah Grace McFADDEN; John Doe McFadden, and the marital community thereof; and Carolyn Elsey; John Doe Elsey, and the marital community thereof; and County of Pierce, Appellants.
No. 39802-8-II.
Court of Appeals of Washington, Division 2.
April 28, 2011.
*732 Daniel Ray Hamilton, Attorney at Law, Tacoma, WA, for Petitioner.
Christopher Taylor, The Evergreen Law Group, P.S., Olympia, WA, for Respondent.
CASEY, J.P.T.[1]
¶ 1 Carolyn Elsey and Deborah McFadden, two attorneys with the Pierce County Department of Assigned Counsel (DAC), appeal the trial court's denial of their CR 12(b)(6) motion, arguing that the statute of limitations on Robert Hipple's attorney malpractice action has expired. They claim that the trial court erred in finding that the statute of limitations tolled under the continuous representation rule. They also argue that Hipple failed to allege facts sufficient to show proximate cause. We granted discretionary review to determine the proper application of the continuous representation rule. We hold that although the trial court may have misapplied the continuous representation rule, it did not err in denying the defendants' motion to dismiss. We affirm.

FACTS
¶ 2 On January 8, 2004, a Pierce County Superior Court commissioner found Hipple in contempt of court for failing to comply with a child support order. The commissioner issued a bench warrant for his arrest, setting bail at $4,000, the approximate amount of support found owing. The order indicated that Hipple could purge his contempt by bringing his support current.
¶ 3 Hipple was arrested on the warrant over a year later on April 15, 2005, and placed in jail. In the next several days, Hipple contacted DAC and was determined eligible for appointed counsel. On May 9, 2005, Hipple received a letter from DAC notifying him that attorney Carolyn Elsey had been appointed to represent him. On May 10, 2005, DAC attorney Deborah McFadden filed a special notice of appearance on behalf of Hipple in connection with the contempt matter.
¶ 4 Previously, on May 5, 2005, Hipple had a hearing to review his release conditions. He was not represented by counsel at the hearing. Child support arrearages were calculated to be $20,297775, before interest. Continued confinement was ordered: Release was conditioned upon payment of the arrearages. On June 28, 2005, Hipple's confinement was changed to electronic home monitoring.
¶ 5 According to, he had contact with Elsey about his case a few days after May 9, 2005, and again about a month later. He claims that thereafter, he attempted to contact Elsey and McFadden numerous times in writing and by telephone regarding his case.
¶ 6 On June 21, 2006, attorney Robert Way filed a special notice of appearance on behalf of Hipple regarding the contempt matter. At a hearing on September 18, 2006, Way secured Hipple's release. Ongoing detention and electronic home monitoring were immediately terminated.
¶ 7 On June 18, 2009, Hipple filed a legal malpractice claim against Elsey and McFadden. Elsey and McFadden moved to dismiss, arguing the statute of limitations barred the action, and, alternatively, that the complaint did not demonstrate proximate cause. The trial court denied the motion, *733 ruling that under the continuous representation rule, Way's filing an appearance on the contempt was a reasonable point in time for the action to accrue. We granted discretionary' review to review the proper application of the continuous representation rule.

ANALYSIS

I. STATUTE OF LIMITATIONS
¶ 8 Elsey and McFadden assign error to the trial court's denial of their motion to dismiss the complaint. According to Elsey and McFadden, Hipple sat on his rights for over four yearsuntil June 2009well past the three-year-limitation period. They argue that the "continuous representation" rule, which tolls the statute of limitations as long as the attorney continues to represent the client in the same matter, cannot apply here where the malpractice action is based on a claim of lack of representation. Br. of Appellant at 11. Instead, they argue that under the "discovery rule," which begins the running of the statute of limitations when a plaintiff discovers the facts giving rise to a cause of action, Hipple's action accrued starting in May 2005, by which time he knew of his alleged injury. Br. of Appellant 7-8.
¶ 9 We review CR 12(b)(6) rulings de novo. Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005). A trial court should grant a motion to dismiss under CR 12(b)(6) only if it appears beyond doubt that the plaintiff cannot prove any set of facts, consistent with the complaint, justifying recovery. Burton, 153 Wash.2d at 422, 103 P.3d 1230; see also McCurry v. Chevy Chase Bank, FSB, 169 Wash.2d 96, 101, 233 P.3d 861 (2010) (refusing to change the standard for dismissing a CR 12(b)(6) motion despite the United States Supreme Court's recently altered interpretation of Federal Rules of Civil Procedure 12(b)(6)). In addition, a defendant may ask a trial court to dismiss a claim brought after the statute of limitations has expired. See e.g., Atchison v. Great W. Malting Co., 161 Wash.2d 372, 374, 166 P.3d 662 (2007). For the purposes of this analysis, a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record. Burton, 153 Wash.2d at 422, 103 P.3d 1230.

A. Continuous Representation Rule

¶ 10 The statute of limitations for attorney malpractice action is three years. RCW 4.16.080(3); Huff v. Roach, 125 Wash. App. 724, 729, 106 P.3d 268, review denied, 155 Wash.2d 1023, 126 P.3d 1279 (2005). The "continuous representation" rule tolls the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred. Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C., 109 Wash.App. 655, 661, 37 P.3d 309 (2001), review denied, 146 Wash.2d 1019, 51 P.3d 88 (2002); see also Burns v. McClinton, 135 Wash.App. 285, 297, 143 P.3d 630 (2006) (recognizing the continuous representation rule with its limitation to representation concerning a particular transaction), review denied, 161 Wash.2d 1005, 166 P.3d 718 (2007). In Janicki, the court noted policy reasons in favor of adopting the rule in Washington: (1) the rule avoids disruption of the attorney-client relationship and gives attorneys a chance to remedy mistakes before being sued, (2) it prevents attorneys from defeating a malpractice claim by continuing to represent a client until the statute of limitations has expired, and (3) speculative malpractice claims are avoided. Janicki, 109 Wash.App. at 662, 37 P.3d 309. Moreover, the rule is consistent with the purpose of the statute of limitations, which is to prevent stale claims and enable the defendant to preserve evidence. Janicki, 109 Wash.App. at 662, 37 P.3d 309. The application of the continuous representation rule should be based on whether any of the above policy considerations are furthered. Burns, 135 Wash.App. at 294, 143 P.3d 630 (quoting 2 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 22.13, at 372 (2006 ed.)).
¶ 11 The test for determining whether an attorney's representation of a client regarding a specific subject matter continues or ends is a matter of first impression in Washington. In general, the determinative event for the continuous representation rule is when the representation ended. 3 RONALD *734 E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 23.13, at 434 (2008 ed.). The inquiry is not whether an attorney-client relationship ended but when the representation of the specific subject matter concluded. 3 Mallen & Smith, § 23.13, supra, at 434 (2008). Termination does not require formally withdrawing as counsel; de facto termination can be implied from circumstantial evidence. 3 Mallen & Smith, supra, § 23.13, at 439 (2008). As there is no bright-line rule for determining when representation ends, particular circumstances most often present an issue of fact. 3 Mallen & Smith, supra, § 23.13, at 440 (2008); see e.g., Gonzalez v. Kalu, 140 Cal.App.4th 21, 31, 43 Cal.Rptr.3d 866 (2006).
¶ 12 The test for deciding when representation ends varies by jurisdiction. The so-called "New York rule" states that an attorney-client relationship exists as long as there are clear indicia of an ongoing, continuous, developing and dependant relationship. Muller v. Sturman, 79 A.D.2d 482, 437 N.Y.S.2d 205, 208 (1981). Other courts have adopted a more concrete test, stating that de facto termination occurs if the client clearly indicates that he is no longer relying on the professional judgment of his attorney and adopts a position adverse to that of the attorney. DeLeo v. Nusbaum, 263 Conn. 588, 597-98, 821 A.2d 744 (2003). In these cases, continuity of representation depends not on the client's subjective beliefs but on evidence of an ongoing mutual relationship and of activities in furtherance of that relationship. Worthington v. Rusconi, 29 Cal.App.4th 1488, 1498, 35 Cal.Rptr.2d 169 (1994).
¶ 13 These rules, however, are of limited use where unilateral conduct on the part of the attorney arguably terminates the attorney-client relationship. If the measure of a terminated relationship is a client's objective step toward ending a relationship, an attorney can too easily exploit the client's reliance and escape liability. Gonzalez, 140 Cal. App.4th at 30, 43 Cal.Rptr.3d 866. As we noted above, one of the stated purposes of the continuous representation rule is to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired. Janicki, 109 Wash.App. at 662, 37 P.3d 309. This purpose cannot be served if tolling ends when the attorney unilaterally abandons representation or ceases to attempt to remedy an error without the client's knowledge or consent.
¶ 14 Consistent with the purposes of the rule, other authorities state that representation may still end if the attorney withdraws unilaterally, but only if the client has no reasonable expectation of continued representation. Gonzalez, 140 Cal.App.4th at 30-31, 43 Cal.Rptr.3d 866; see also Shumsky v. Eisenstein, 96 N.Y.2d 164, 170-71, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001) (date measured from when client knew or should have reasonably known of the attorney's abandonment of representation). In Gonzalez, the lawyer claimed to end the attorney-client relationship, but the client disputed receiving notice of the termination and alleged that she still believed the attorney was pursuing her claim. Gonzalez, 140 Cal. App.4th at 26, 43 Cal.Rptr.3d 866. The court concluded that resolution of when the representation ended was a question of fact and that where there is unilateral withdrawal or abandonment, the representation ends "when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." Gonzalez, 140 Cal.App.4th at 30, 43 Cal.Rptr.3d 866.
¶ 15 We adopt the Gonzalez approach. Running the statute of limitations from the first break in continuity of the relationship does not protect an injured client where the attorney abandons representation. The Gonzalez rule, which accounts for the client's reasonable expectations, is an appropriate standard to apply because it furthers the stated objective of preventing an attorney from being able to wait out an alleged malpractice claim.
¶ 16 Elsey and McFadden argue that the continuous representation rule cannot apply where the malpractice action is based on a claim of lack of representation. But Elsey and McFadden have not contested that an attorney-client relationship was formed. Thus, in applying the continuous representation rule, we encounter the factual question of when the relationship ended. At what *735 point Hipple could no longer reasonably expect to receive services from Elsey or McFadden is not a question this court can answer as a matter of law. Even if the trial court misapplied the continuous representation rule by holding that the statute of limitations tolled until Hipple received new representation, it did not err in denying the defendant's motion to dismiss. We hold that whether the statute of limitations tolled under the continuous representation rule is an appropriate determination for trial.

B. Discovery Rule

¶ 17 In addition to contesting the application of the continuous representation rule, Elsey and McFadden contend that Hipple's claims are barred under the "discovery rule." Br. of Appellant at 7-8. The discovery rule states that the statute of limitations does not start to run on an attorney malpractice claim until the client discovers, or in the exercise of reasonable diligence should have discovered, facts that give rise to his cause of action. Peters v. Simmons, 87 Wash.2d 400, 406, 552 P.2d 1053 (1976). The rule does not require knowledge of the existence of a legal cause of action; instead, the statute of limitations begins to run when the plaintiff knew or should have known all the essential elements of the cause of actionduty, breach, causation, and injury. Matson v. Weidenkopf, 101 Wash.App. 472, 482, 3 P.3d 805 (2000).
¶ 18 Consequently, the discovery rule has consistently been applied to toll the statute of limitations until the plaintiff discovers, or should have discovered, his injury resulting from professional malpractice. Richardson v. Denend, 59 Wash.App. 92, 96, 795 P.2d 1192 (1990), review denied, 116 Wash.2d 1005, 803 P.2d 1309 (1991). The application of the discovery rule is generally a factual question. Matson, 101 Wash.App. at 482, 3 P.3d 805. But where reasonable minds can reach but one conclusion, questions of fact may be determined as a matter of law. Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985).
¶ 19 Elsey and McFadden argue that Hipple's repeated attempts to contact DAC attorneys beginning in May 2005 show that he wanted to challenge his confinement. Thus, according to Elsey and McFadden, Hipple knew the facts, including his injury, which constitute his malpractice claim as early as May 2005. Hipple responds that the application of the discovery rule presents a question of fact for the jury. He asserts that his repeated efforts to contact his attorneys show he continued to believe that they would assist him.
¶ 20 At trial, if the jury concludes that the continuous representation rule tolls the statute of limitations to preserve Hipple's claim, it need not determine if the discovery rule applies. See Burns, 135 Wash.App. at 299, 143 P.3d 630 (plaintiff can argue the grounds for tolling the statute of limitations in the alternative). But if the continuous representation rule does not toll Hipple's claim, the date of Hipple's discovery of his injury is still an issue of fact that would require trial. Under the CR 12(b)(6) standard, it is possible that Hipple did not know he had a legal basis for challenging his continued confinement until Way began to represent him. Thus, the denial of the motion to dismiss was proper on the grounds that whether the discovery rule applies is a factual question for the jury.

II. PROXIMATE CAUSE
¶ 21 Elsey and McFadden also argue that the court should have granted the motion to dismiss because Hipple failed to show that he would have received a more favorable outcome in the underlying action but for defendant's alleged malpractice. They claim that the cause of Hipple's continued detention was his intentional failure to comply with the 2004 court order. They also claim that Hipple cannot meet the burden of showing that he had a right to be released as a matter of law before September 2006. Hipple responds that Elsey and McFadden have failed to show beyond doubt that the facts alleged in the complaint preclude a finding that Elsey and McFadden caused his injury.
¶ 22 Liability for legal malpractice requires proof of four elements: (1) the existence of an attorney-client relationship giving rise to a duty of care on the part of the lawyer; (2) an act or omission breaching *736 that duty; (3) damage to the client; and (4) the breach of duty must have been a proximate cause of the damages to the client. Nielson v. Eisenhower & Carlson, 100 Wash. App. 584, 589, 999 P.2d 42, review denied, 141 Wash.2d 1016, 10 P.3d 1071 (2000). When determining questions of causation in a legal malpractice action, the concern is cause in fact, i.e., the "but for" consequences of an attorney's negligent act or omission. Geer v. Tonnon, 137 Wash.App. 838, 844, 155 P.3d 163 (2007), review denied, 162 Wash.2d 1018, 178 P.3d 1032 (2008).
¶ 23 In most cases, cause in fact is a question for the jury to decide. Daugert v. Pappas, 104 Wash.2d 254, 257, 704 P.2d 600 (1985). Only where the causation question requires legal analysis is the issue one for the court to decide. See Brust v. Newton, 70 Wash.App. 286, 290-91, 852 P.2d 1092 (1993) ("the line between questions for the judge and those for the jury in legal malpractice actions has generally been drawn between questions of law and questions of fact"), review denied, 123 Wash.2d 1010, 869 P.2d 1085 (1994). At this stage in the proceedings, we need only decide whether the complaint precludes a finding that Elsey and McFadden caused Hipple's continued detention as a matter of law.
¶ 24 Incarceration for civil contempt can continue only so long as it serves a coercive purpose. King v. Dep't of Soc. & Health Servs., 110 Wash.2d 793, 802, 756 P.2d 1303 (1988). A threshold requirement is a finding of current ability to perform an act previously ordered. Britannia Holdings Ltd. v. Greer, 127 Wash.App. 926, 933, 113 P.3d 1041 (2005), review denied, 156 Wash.2d 1032, 134 P.3d 232 (2006). Once a court is convinced that the contemnor will steadfastly refuse 10 comply with the terms of the order, the court is obligated to release him since incarceration would no longer serve its coercive purposes. King, 110 Wash.2d at 803, 756 P.2d 1303. An incarcerated contemnor must be afforded the opportunity to purge himself of the contempt and, at regular intervals, to present new evidence tending to show that confinement has lost it coercive effect. King, 110 Wash.2d at 805, 756 P.2d 1303.
¶ 25 Here, Elsey and McFadden are unable to show that Hipple cannot prove causation as a matter of law. Based on the facts alleged in the complaint, it is possible that the outcome of the May 5, 2005 hearing would have been different had counsel been available. The complaint alleges that in 2005, DAC determined that Hipple qualified for appointed counsel, supporting the inference that he was unable to pay the terms of the initial contempt order. This is an issue of fact that if proved, refutes Elsey and McFadden's claim that the 2005 order was a result of Hipple's refusal to pay and that no representation would have changed the outcome of the hearing.
¶ 26 Furthermore, Hipple had the right to present new evidence in regular intervals after May 2005 to purge himself of the contempt. See King, 110 Wash.2d at 805, 756 P.2d 1303. Elsey and McFadden cannot support their assertion that Hipple was not entitled to have a court address the terms of his release before September 2006. Because there is a factual question as to whether Hipple was able to pay the terms of his release, it is possible that Hipple could have proved his indigent status to demonstrate that the court's order no longer served a coercive purpose. Under CR 12(b)(6), Elsey and McFadden had to prove beyond doubt that that Hipple could not prove any set of facts establishing causation. Burton, 153 Wash.2d at 422, 103 P.3d 1230. They have failed to meet this burden and the trial court did not err in dismissing their motion to dismiss the complaint.
¶ 27 Affirmed.
I concur: WORSWICK, A.C.J.
QUINN-BRINTNALL, J. (concurring in part and dissenting in part).
¶ 28 I agree with the majority that because a threshold factual question remains as to Carolyn Elsey, the trial court did not err when it denied her CR 12(b)(6) motion to dismiss. I write separately to express my view that in order for the continuous representation rule to apply and toll the statute of limitations, Robert Hipple must bear the initial burden to prove that Deborah *737 McFadden's and Elsey's representation was continuous. Because proof of a continuous representation is a crucial threshold step in the rule's analysis and because Hipple failed to allege any facts which allow him to survive McFadden's motion to dismiss, I would hold that the trial court improperly denied McFadden's motion to dismiss on statute of limitations grounds. Accordingly, I would remand with directions that the trial court dismiss Hipple's lawsuit against McFadden. Likewise, as to Elsey, to avoid dismissal on statute of limitations grounds on remand, Hipple bears the burden of establishing that Elsey's representation was continuous and that her representation terminated less than three years before he filed this lawsuit.
¶ 29 The continuous representation rule tolling the statute of limitations first requires proof that an attorney's representation of a client was continuous. See, e.g., Burns v. McClinton, 135 Wash.App. 285, 296, 143 P.3d 630 (2006) (the "continuous relationship" rule requires only a continuing relationship as a predicate for tolling the statute of limitations), review denied, 161 Wash.2d 1005, 166 P.3d 718 (2007). Here, the discussion of the continuous representation rule begins with an assumption that the continuous representation rule applies automatically at the inception of any attorney-client relationship. But the fact of representation is a separate question from whether the representation was continuous in a given case. In other words, the continuing representation doctrine is an exception to the application of the bar of the statute of limitations, not the rule. MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P., 701 F.Supp.2d 518, 525 (S.D.N.Y.2010). And as an exception, the burden is on the party asserting it, here Hipple, to establish sufficient facts demonstrating that the rule applies. Rivas v. Overlake Hosp. Med. Ctr., 164 Wash.2d 261, 267, 189 P.3d 753 (2008) (citing Cannavina v. Poston, 13 Wash.2d 182, 190-91, 124 P.2d 787 (1942)).
¶ 30 The continuous representation rule evolved from the doctrine of continuous treatment which has its roots in the medical malpractice field. Like courts in many other jurisdictions, Washington courts have expanded the rule to toll the statute of limitations for a variety of professional malpractice claims. See, e.g., Seattle First Nat'l Bank, N.A. v. Siebol, 64 Wash.App. 401, 406, 824 P.2d 1252 (doctrine applies to doctors, attorneys, dentists, architects, accountants, surveyors, executors, and investment advisors), review denied, 119 Wash.2d 1010, 833 P.2d 386 (1992). I agree generally with the majority that the policy reasons to adopt the doctrine are the same as to each of the different professions. Courts have struggled, however, to delineate a bright-line test to measure exactly when an attorney's representation is "continuous" for purposes of the rule. Unlike patients and doctors, clients often do not meet with their attorney on a regular basis for "treatment" as required under the continuous treatment rule. See Koenig v. Group Health Coop. of Puget Sound, 5 Wash.App. 836, 838-39, 491 P.2d 702 (1971) (continuity requires regular sessions between doctor and patient for the same condition). Washington courts have yet to decide the parameters of continuity with any specificity. Indeed, the court in Janicki Logging & Construction Co. v. Schwabe, Williamson, Wyatt, P.C., 109 Wash.App. 655, 37 P.3d 309 (2001), which adopted the continuous representation rule in Washington, only distinguished when the tolling effect would end in attorney malpractice cases; it did not discuss the test for determining whether an attorney's representation is continuous. Janicki Logging, 109 Wash.App. at 661 n. 1, 37 P.3d 309 (distinguishing "continuous relationship" from "continuous representation" and holding that, for attorneys, the rule tolls the statute of limitations until the end of the attorney's representation in the same matter in which the alleged malpractice occurred). Even assuming the Janicki court, by declining to address the continuity standard under the continuing relationship rule, intended to retain such standard, the "standard" under Washington law is, at best, vague and, as an exception to the statute of limitations, must be narrowly construed. O'Neil v. Estate of Murtha, 89 Wash.App. 67, 73, 947 P.2d 1252 (1997) (quoting Rushlight v. McLain, 28 Wash.2d 189, 199, 182 P.2d 62 (1947)), review denied, 135 *738 Wash.2d 1003, 959 P.2d 126 (1998); see also Rivas, 164 Wash.2d at 267, 189 P.3d 753 (because the party asserting an exception to the statute of limitations bears the burden of proving that a tolling provision applies, courts do not presume such exceptions apply).
¶ 31 Washington courts have generally held that to show continuity, a plaintiff must demonstrate (1) ongoing (2) professional services (3) related to the specific matter for which he bases (4) the malpractice claim, "`not merely the continuation of a general professional relationship.'" See, e.g., Burns, 135 Wash.App. at 297-99, 143 P.3d 630 (quoting Ackerman v. Price Waterhouse, 252 A.D.2d 179, 683 N.Y.S.2d 179, 197 (N.Y.App. Div.1998)). This still leaves open the question of how to measure whether services are "ongoing"a synonym of "continuous"in legal malpractice cases.
¶ 32 Other jurisdictions have held that for the doctrine to apply there must be "`clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney.'" Nevin v. Union Trust Co., 1999 ME 47, ¶ 37, 726 A.2d 694 (quoting Schoenrock v. Tappe, 419 N.W.2d 197, 201 (S.D.1988)). The relationship between the parties must be marked with trust and confidence and not sporadic but developing. Muller v. Sturman, 79 A.D.2d 482, 485, 437 N.Y.S.2d 205 (N.Y.App.Div.1981). This standard is consistent with the approach in Gonzalez v. Kalu, 140 Cal.App.4th 21, 30, 43 Cal.Rptr.3d 866 (2006), to determine when a continuous representation ends between an attorney and client. Majority at 734-35.
¶ 33 I acknowledge that if Hipple had presented evidence supporting his claim that McFadden's representation was a continuing one which tolled the statute until the representation terminated, his claim would be a factual question appropriate for the fact finder. Hermann v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 17 Wash.App. 626, 630, 564 P.2d 817 (1977). However, here, Hipple fails to allege that he had any contact with McFadden. It appears her only involvement was filing a special notice of appearance for a show cause hearing on May 10, 2005, five days after Hipple's initial hearing. In my opinion, the notice of limited representation and the complete lack of contact between Hipple and McFadden precludes any finding of an ongoing, developing relationship of trust and confidence necessary to support a determination of continuous representation under any hypothetical circumstance. Accordingly, on these facts, I cannot agree with the majority that the continuing representation rule applies to McFadden or that Hipple has otherwise alleged sufficient circumstances to survive a CR 12(b)(6) motion as to McFadden.
¶ 34 Moreover, as a practical matter, there are critical differences between the public and private practices of law which may significantly impact the application and scope of any continuous representation requirement. From its origins, the continuing representation doctrine's analysis has centered on a client's reasonable expectation of further treatment or service from a chosen provider. But unlike a patient choosing a doctor or client hiring a private attorney, an indigent criminal defendant does not choose a specific public defender. And a contract for representation typically does not clearly exist between the individual attorney and the indigent defendant.
¶ 35 Accordingly, I would reverse the trial court's denial of McFadden's motion to dismiss on statute of limitations grounds and remand with instructions to dismiss her from the case. As to Elsey, I would remand for a hearing on the threshold factual determination of whether her representation was continuous. Only if Hipple presents evidence sufficient for the trier of fact to determine that her representation was continuous and the statute of limitations tolled should there be a determination of when Hipple actually had or should have had no expectation that Elsey would provide further legal services. Gonzalez, 140 Cal.App.4th at 30, 43 Cal. Rptr.3d 866.
NOTES
[1] Judge Paula Casey is serving as a judge pro tempore of the Washington State Court of Appeals pursuant to CAR 21(c).