# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DWP GENERAL CONTRACTING, INC., a Washington Corporation,<br><br>Appellant,<br><br>v.<br><br>WILSON ARCHITECTS, PLLC, a Washington professional limited liability company; and RYAN WILSON, an individual,<br><br>Respondents. | No. 59099-9-II<br><br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — DWP General Contracting (DWP) appeals a trial court order granting Ryan Wilson and Wilson Architects'[1] motion for summary judgment and dismissing DWP's claims. DWP argues that there was a genuine issue of material fact as to whether Wilson proximately caused DWP's injury. Wilson seeks appellate attorney fees and costs.

We affirm the summary judgment order. And we deny Wilson's request for appellate attorney fees and costs.

## FACTS

### A. BACKGROUND AND LEE'S LAWSUIT AGAINST DWP

In 2015, Dr. Harold Lee hired DWP as a general contractor to build an apartment complex. Dennis Pavlina, DWP's president, drafted the contract for the project. The parties' contract gave

---

[1] DWP sued both Wilson Architects as a professional limited liability corporation and Ryan Wilson as an individual. For clarity, we refer to Ryan Wilson by his first name and to the respondents collectively as Wilson. We mean no disrespect.

DWP 180 days after the start of construction to substantially complete the project. Wilson Architects was the architect for the project.

DWP began construction in September 2015. In September 2016, six months *after* the contracted completion date, DWP stopped work because Lee had stopped making payments. When DWP stopped work on the project, the project was still incomplete; the apartment complex was about only 60 percent complete at that time.

Lee contacted Ryan, an intern architect working on the project, asking him "to see if there was anything [he] could do to help" resolve the work stoppage. Clerk's Papers (CP) at 137. Ryan then met with Pavlina to discuss the work stoppage. Ryan determined that the work stoppage was the result of a breakdown in communication between DWP and Lee, so Ryan offered to act as a mediator between the two parties and to manage the construction going forward.

Ryan e-mailed Pavlina a draft "Agreed Upon Procedures" (AUP), which set forth the terms for DWP to resume work on the project. In that e-mail, Ryan said, "I think you have most of the leverage at this point, so let me know . . . what changes you would like to see to get this project moving forward again." CP at 481. Pavlina asked Ryan to add details allowing DWP to terminate the contract if Lee was late on payments. Throughout his communications with Ryan, Pavlina was insistent that Lee had breached the contract by failing to timely make payments. Pavlina did not ask Ryan to incorporate any provisions waiving consequential damages or extending the original substantial completion date. Ryan did not know that the project was past the original contract deadline when he drafted the AUP.

The AUP was incorporated into the original contract via a change order. Pavlina signed the change order incorporating the AUP into the original contract without having an attorney review the AUP.

The AUP provided that Wilson Architects would regularly visit the work site and oversee the administration of the project, as well as coordinate and oversee the process by which DWP applied for and received progress payments. The AUP did not mention the contract price or deadline. And the change order incorporating the AUP, which Pavlina signed, clearly stated that the AUP did not change the original contract price or deadline.

After Pavlina and Lee signed the change order incorporating the AUP into the original contract, Ryan asked Pavlina to send over an updated construction schedule for the project, commenting: "I'm sure that whatever schedule you created before is now void, which is fine. . . . [P]lease update based on where things stand today and send it over." CP at 37. But Pavlina never put together an updated construction schedule for the project. Instead, Ryan regularly visited the project site to discuss progress with Pavlina.

DWP resumed construction in October 2016 and finished the project in June 2017. When another dispute about construction delays and payments arose, Ryan mediated the dispute at the request of both DWP and Lee. Ryan issued a decision memo about the dispute, observing that Lee's complaints about the construction delays and DWP's complains about late payments were "more correctly treated as a breach of contract" dispute. CP at 89 (underlining omitted). Lee then sued DWP for breach of contract, seeking damages for lost profits from the delay in finishing construction.

3

At a jury trial in Lee's lawsuit against DWP, Ryan testified that, if he had known that DWP was well beyond the original construction deadline and in breach of the contract when he drafted the AUP, he "would have addressed it" in the AUP. CP at 140. Ryan also testified that he had e-mailed Pavlina about the construction schedule being void based entirely on his own assumption that the original schedule was void. He explained, "I had not seen any previous construction schedules and because of the walk-off, I assumed that even if one had been created, it was no longer applicable. So I was just saying create a new construction schedule and get it to me as soon as you can." CP at 143.

Pavlina testified that the primary purpose of the AUP was to ensure timely responses to construction administration matters, timely payments, and to have Ryan, not Lee, determine when the project was substantially complete.

The jury found that DWP breached its contract with Lee. The jury awarded Lee approximately $500,000 in damages for DWP's breach of contract.

B.      CURRENT LAWSUIT

After the jury found DWP liable for breaching its contract with Lee, DWP sued Wilson for negligence, unauthorized practice of law, and a violation of Washington's Consumer Protection Act. For the negligence claim, DWP alleged that Wilson owed DWP a duty in preparing the AUP. CP at 6. DWP alleged that "Defendants breached that duty by improperly documenting the status of the construction, by failing to review the Construction Contract, and by failing to modify the completion date despite stating that it was void." CP at 6. "As a result of Defendants' breach of their duty," DWP alleged that it suffered damages in the form of the "amount awarded by the jury"

4

in Lee's lawsuit "plus attorneys' fees and costs." CP at 6. DWP also alleged that Ryan's actions in drafting the AUP and change order constituted the unauthorized practice of law.

1.    Summary Judgment Motions

Wilson moved for summary judgment, seeking dismissal of all of DWP's claims, and DWP moved for partial summary judgment on its unauthorized practice of law and negligence claims.[2]

Wilson argued that DWP lacked "evidence to support that any action of Wilson proximately caused DWP's damages, let alone[] was a violation of a recognized duty." CP at 634. Wilson insisted that, for DWP to prevail on its negligence claim, "DWP must show that they would have been in a better position had Wilson included language waiving the consequential damages and changing DWP's deadline to complete its work," which DWP could not do because there was "no evidence" that Lee would have agreed to those changes. CP at 636.

In support of its motion, Wilson submitted Lee's deposition excerpts from Lee's lawsuit against DWP. In that deposition, Lee stated that he did not believe the AUP changed the original contract time or otherwise cancelled or replaced anything in the original contract. And Lee stated that he had no concerns about signing the AUP "because our issue was . . . Construction Administration, Progress Payment, you know, Project Completion." CP at 554. "So to me the [concern] was not . . . what I was signing, the main concern was how we have some sort of document so that both part[ies] can agree upon for the procedure of things so that it can be completed." CP at 554-55.

---

[2] The trial court considered the two motions together, but DWP's motion is not in the record on appeal, although our record does contain declarations filed in support of that motion.

DWP argued that Wilson owed DWP a duty of care because "DWP was at least one of the intended beneficiaries of the agreement to resolve the October 2016 dispute and resume work on the Project." CP at 734. DWP asserted that Ryan breached that duty of care by failing to address in the AUP the fact that DWP was long past the contractual completion date, and that this breach proximately caused DWP's injury of being sued by Lee. DWP contended that Ryan's e-mail stating the original construction schedule was void constituted evidence that Ryan "thought that Lee would" have agreed to waive consequential damages and the original construction deadline. Verbatim Rep. of Proc. (VRP) at 38.

Pavlina filed a declaration stating that DWP would not have agreed to the AUP if Ryan "had informed [Pavlina] that these documents did not modify the original completion date in the Construction Contract and did not include a mutual waiver of consequential damages." CP at 21. Pavlina asserted that DWP "would have no incentive to proceed with the job without addressing these issues because its exposure to damages would only worsen with time." CP at 21. In another declaration, Pavlina asserted that in a phone call before he signed the change order incorporating the AUP into the original contract, Ryan assured Pavlina "that DWP would not get sued when the project was complete." CP at 668.

DWP also submitted declarations from former Washington Supreme Court Justice Phillip Talmadge. Talmadge opined that Ryan had engaged in the unauthorized practice of law by drafting the AUP and that Ryan breached both his duty of care and fiduciary duty as an attorney to DWP through his negligence in drafting the AUP. Talmage stated that Wilson's negligence was the proximate cause of DWP's damages, because "had Wilson raised the issue in October 2016, when

he acknowledged that DWP had leverage, DWP could have avoided or mitigated liability in connection with delay. Lee was desperate to have DWP return to the project and he likely would have signed whatever was required to accomplish that result." CP at 754. DWP did not submit any evidence of statements or testimony from Lee that he would have waived consequential damages or agreed to extend the construction deadline in order to have DWP resume work.

In reply, Wilson asserted that Talmadge's opinion "regarding proximate cause consists of nothing more than inadmissible speculation and conclusory statements." CP at 807. Wilson argued that DWP had provided "no evidence . . . that Howard Lee would ever agree to any sort of change" in the contract deadline and "no evidence that [DWP] would have been in a better position had it simply quit" because DWP would still have been liable for breach of contract as well as any increased construction costs when Lee hired a replacement contractor to complete the project. VRP at 45; CP at 807.

2.      Summary Judgment Ruling

The trial court ruled that Wilson had "engaged in activities that normally would be done by an attorney," but the court was unconvinced that DWP had any evidence to support its claim that Wilson proximately caused DWP's damages. VRP at 51. The trial court also ruled that DWP's Consumer Protection Act claim failed as a matter of law.[3] Accordingly, the trial court denied DWP's motion for partial summary judgment, granted Wilson's motion for summary judgment, and dismissed all of DWP's claims with prejudice.

DWP appeals.

---

[3] This claim is not at issue in this appeal.

7

ANALYSIS

DWP argues that the trial court erred by dismissing its claims on summary judgment because there was a genuine issue of material fact as to whether Wilson proximately caused DWP's damages. DWP asserts that Pavlina's declaration claiming that Ryan told Pavlina DWP would not get sued was evidence that a reasonable juror could use to "fairly infer that both DWP and Wilson understood the [AUP] to include a waiver of consequential damages and modify the construction schedule." Br. of Appellant at 22-23. DWP argues that evidence that Lee wanted DWP to resume work was evidence from which a rational juror could infer that, had the AUP included the consequential damages waiver and reset the construction schedule, Lee would have agreed to those concessions. DWP insists that such a modification to the contract schedule would have been supported by consideration in the form of Wilson's management of the project and DWP not suing Lee for his failure to pay.

Wilson responds that it is not possible to reasonably infer that Lee would have waived the breach of contract claims that led to DWP's damages. Wilson emphasizes that there was no evidence except improper speculation from Talmage that Lee would have accepted an AUP term that waived his claim for consequential damages or reset the construction schedule. And had DWP abandoned the job entirely instead of signing the AUP, DWP would similarly have been exposed to liability for breach of contract.

A.    LEGAL PRINCIPLES

We review a trial court's summary judgment ruling de novo. *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment is appropriate when

the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "We review all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party." *W.M. v. State*, 19 Wn. App. 2d 608, 621, 498 P.3d 48 (2021), *review denied*, 1 Wn.3d 1012 (2022).

"A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue." *Id*. In other words, "[s]ummary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which [they] will have the burden of proof at trial." *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). "[S]peculation and argumentative assertions are not sufficient to create a genuine issue of material fact." *Hungerford v. Dep't of Corr.*, 135 Wn. App. 240, 254, 139 P.3d 1131 (2006), *review denied*, 160 Wn.2d 1013 (2007).

An expert opinion may be sufficient to create a genuine issue of material fact and defeat summary judgment. *Sartin*, 15 Wn. App. 2d at 172. "But an expert's opinion must be grounded in fact, and statements based solely on speculation or assumptions will not preclude summary judgment." *Id.* at 173.

"The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Similarly, even assuming without deciding that Ryan engaged in the unauthorized practice of law when he drafted the AUP that was

incorporated into the original contract that Pavlina drafted, "[l]egal malpractice requires a showing of (1) the existence of an attorney-client relationship giving rise to a duty of care to the client, (2) act or omission in breach of the duty, (3) damages to the client, and (4) proximate causation between the breach and damages." *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 863-64, 147 P.3d 600 (2006), *review denied*, 161 Wn.2d 1011 (2007). The trial court's ruling in this case primarily rested on the proximate cause element of any claim, and that is the only element at issue in this appeal.

Proximate cause is usually a question of fact, but a court may decide the issue "where the causation question requires legal analysis." *Hipple v. McFadden*, 161 Wn. App. 550, 562, 255 P.3d 730, *review denied*, 172 Wn.2d 1009 (2011). And "[t]he court may decide cause in fact as a matter of law . . . if the facts and inferences from them are plain and not subject to reasonable doubt or difference of opinion." *Behla v. R.J. Jung, LLC*, 11 Wn. App. 2d 329, 347, 453 P.3d 729 (2019), *review denied*, 195 Wn.2d 1012 (2020). In other words, causation "becomes a question of law for the court only when the causal connection is so speculative and indirect that reasonable minds could not differ." *Mehlert v. Baseball of Seattle, Inc.*, 1 Wn. App. 2d 115, 119, 404 P.3d 97 (2017).

"When determining questions of causation in a legal malpractice action, the concern is cause in fact, i.e., the 'but for' consequences of an attorney's negligent act or omission." *Hipple*, 161 Wn. App. at 562. "The plaintiff must demonstrate that 'but for' the attorney's negligence [they] would have obtained a better result." *Smith*, 135 Wn. App. at 864. Specifically, "the evidence in the legal negligence matter must be sufficient to allow the trier of fact to reach a

conclusion that is more favorable than the one that was reached based on the original presentation." *Dang v. Floyd, Pflueger & Ringer, PS*, 24 Wn. App. 2d 145, 165, 518 P.3d 671 (2022), *review denied*, 200 Wn.2d 1032 (2023).

B.     NO GENUINE ISSUE OF MATERIAL FACT REGARDING PROXIMATE CAUSE

Here, establishing a causal link between Ryan's preparation of the AUP and DWP's damages required evidence that, in a document governing construction administration prepared six months *after* the original deadline for construction completion had passed, Lee would have agreed to waive the approximately $500,000 in consequential damages that he later pursued and won at trial against DWP. The only evidence DWP cites in support of this theory is Talmadge's declaration, which asserted that  Lee "was desperate to have DWP return to the project and he likely would have signed whatever was required to accomplish that result." CP at 754.

"[A]n expert's opinion must be grounded in fact, and statements based solely on speculation or assumptions will not preclude summary judgment." *Sartin*, 15 Wn. App. 2d at 173. There is no evidence that Lee would have waived consequential damages or agreed to extend the contract timeline in order to have DWP resume work. At best, there was evidence from Lee's deposition that he wanted the project finished and was not particularly worried about handing over the administrative reins to Wilson. But in that same deposition, Lee stated that he did not believe the AUP changed the original contract deadline, which was consistent with the plain language of the change order incorporating the AUP into the contract. And Wilson is correct that, had DWP refused to return to work on the project unless its hypothetical demands were met, Lee could have

11

hired another contractor to finish the project and then sought additional damages in his lawsuit against DWP.

Even viewing the evidence and drawing all reasonable inferences in the light most favorable to DWP, there is no evidence in the record to support Talmadge's speculation that Lee "likely would have signed whatever was required" to bring DWP back onto the project. CP at 754. Without evidence that Lee would have waived consequential damages and extended the construction deadline, there is no evidence to create a genuine question of material fact about whether Ryan's drafting of the AUP proximately caused DWP's damages resulting from the breach of contract trial between Lee and DWP. *Mehlert*, 1 Wn. App. 2d at 119.

DWP argues that it could have waived its breach of contract claim against Lee in exchange for Lee waiving consequential damages and extending the contract deadline, and that this agreement would have been supported by consideration. But the theoretical possibility of such an agreement does not change the lack of evidence that Lee would have agreed to waive his claims in the first place or that the waiver of claims was ever an issue during negotiation of the AUP. DWP offers no evidence that it ever considered offering to waive its breach of contract claim against Lee. Similarly, evidence about what Ryan told Pavlina about the effect of the AUP or how Pavlina interpreted the AUP does not change the plain language of the change order that Pavlina signed, which clearly states that the AUP did not change the original construction deadline. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014) (explaining that extrinsic evidence may be used to determine the meaning of specific words or terms in a contract, but not to contradict or modify the contract's plain language).

DWP cannot establish a genuine issue of material fact regarding proximate cause sufficient to preclude summary judgment. Accordingly, we hold that the trial court did not err by granting Wilson's motion for summary judgment and dismissing DWP's claims.[4]

## ATTORNEY FEES ON APPEAL

Wilson requests attorney fees and costs on appeal as a sanction for a frivolous appeal under RAP 18.9. RAP 18.9(a) authorizes this court to order a party to "pay terms or compensatory damages" if the party files a frivolous appeal. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007), *review denied*, 162 Wn.2d 1009 (2008). "And we resolve all doubts to whether an appeal is frivolous in favor of the appellant." *Id.*

Although DWP does not prevail on appeal, its appeal was not utterly devoid of merit. Therefore, we deny Wilson's request for attorney fees and costs on appeal.

## CONCLUSION

We affirm the trial court's summary judgment order. And we deny Wilson's request for appellate attorney fees and costs.

---

[4] Wilson also asserts that DWP is judicially estopped from changing the position DWP took during the breach of contract litigation with Lee, where DWP argued that the AUP did not change the construction deadline. And Wilson argues that Pavlina's declaration statement interpreting the AUP is inadmissible extrinsic evidence. Because we resolve this case in Wilson's favor on the proximate cause issue, we do not reach Wilson's arguments about judicial estoppel or extrinsic evidence.

No. 59099-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.