# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JENNIFER LINTH and the estate of CAROLYN LINTH; the EVELYN PLANT TESTAMENTARY TRUST; AND THE FRANKLYN & EVELYN PLANT GREEN POINT FOUNDATION, | No. 45250-2-II |
| Appellants, | |
| v. | Consolidated with: |
| | No. 45590-1-II |
| CARL GAY and ROBIN A. GAY, husband and wife, and the marital community composed thereof; GREENWAY & GAY, a Washington legal partnership; GREENWAY, GAY & ANGIER, a Washington legal partnership; GREENWAY, GAY & TULLOCH, a Washington legal partnership; and DANIEL W. DORAN and CAROL DORAN, husband and wife, and the marital community composed thereof, | |
| | PART PUBLISHED OPINION |
| Respondents. | |

LEE, J. — This litigation involves a legal malpractice action arising from a dispute over an amendment to the Evelyn Plant Testamentary Trust ("the Trust"). Carl Gay was hired to draft the Trust and the First Amendment ("Amendment") to the Trust. After Plant's death, beneficiaries of the Trust challenged the validity of the Amendment.

In 2009, Jennifer Linth, in her individual capacity as a beneficiary, brought a legal malpractice suit against Gay. In 2011, Linth formed the Franklin and Evelyn Plant Green Point

Foundation ("the Foundation"). In 2011, the Trust and the Foundation moved to intervene in Linth's suit.

Gay moved for summary judgment against Linth, arguing that he did not owe her a duty as a nonclient beneficiary, and the superior court granted Gay's motion for summary judgment. Gay then moved for summary judgment against the Trust and the Foundation, arguing that the statute of limitations had expired, and the superior court also granted this motion.

In the published part of this opinion, we hold that Gay did not owe Linth a duty as a nonclient beneficiary. In the unpublished portion of this opinion, we hold that the statute of limitations has expired for the Trust's and the Foundation's claims against Gay. Accordingly, we affirm the superior court's order granting Gay's motions for summary judgment and dismissing all claims against Gay.

FACTS

Evelyn Plant owned and lived on property known as Green Point in Port Angeles, Washington. In July 2000, Plant retained Gay to create a living trust. On July 22, 2000, Plant signed the Trust, naming herself trustee.

In relevant part, the Trust provided a gift of $100,000 to Linth. It also provided that if the Green Point property was part of Plant's estate, then it was to be conveyed to Crista Ministries, Inc., subject to the condition that "[f]or a period of five (5) years commencing immediately upon [Plant's] death, [Linth] shall be entitled to an estate in the Green Point residence" and "[u]pon expiration of the five-year estate, [Linth] shall be entitled to a life estate in the northeast corner of the approximately sixty (60) acres." Clerk's Papers (CP) at 606-07.

In August 2000, Plant resigned as trustee and appointed Daniel W. Doran[1] as successor trustee. Gay remained counsel to Doran in his role as trustee.

Also in August 2000, Plant sought to amend the Trust. Gay drafted the Amendment.

On August 22, 2000, Doran took a draft of the Amendment from Gay's office and presented the draft to Plant, who signed it. The Amendment provided that if the Green Point property was part of Plant's estate, then it was to be conveyed, along with $50,000,

> to a nonprofit corporation and tax-exempt private foundation to be created by trustee in accordance with the terms set forth on the document entitled "THE FRANKLIN AND EVELYN PLANT GREEN POINT FOUNDATION PLAN" [. . .] a copy of which is attached hereto marked Exhibit 1 and by this reference incorporated herein as though set forth in full. The gift of cash and the Green Point residence to the Foundation shall be subject to the following:
> . . . [Linth] shall be entitled to occupy [Plant's] residence at Green Point, free of any costs, subject to the Foundation plan.

CP at 631-32. However, the referenced Foundation plan did not exist at the time Gay drafted the Amendment and exhibit 1 was not attached. The Amendment also removed Crista Ministries as a beneficiary.

Doran hired Linth's sister, Claudia Smith, to help create the Foundation in accordance with the Amendment and Plant's wishes. But before the Foundation was created, Plant died on January 1, 2001. In March 2001, Smith presented a Foundation plan to Doran and Gay. Doran and Gay did not believe that Smith's Foundation plan conformed to Plant's wishes, and Doran did not adopt Smith's plan.

Crista Ministries, a beneficiary under Plant's original Trust but not under the Amendment to the Trust, disputed the validity of the Amendment. Linth, who was entitled to a life estate to

---

[1] Doran is deceased and his estate is not involved in this appeal.

the entire Green Point property under the Amendment, as opposed to a life estate in only a portion of the Green Point property under the original Trust, sought to enforce the Amendment.

In 2001, Linth filed a Trust and Estate Dispute Resolution Act (TEDRA)[2] action for a declaration of rights under the Trust.[3] In 2003, Linth and Gay agreed to toll the statute of limitations for Linth's potential claims against Gay. In 2004, attorney S. Brooke Taylor began representing the trustee.

In 2005, Linth signed a Nonjudicial Dispute Resolution Agreement (NDRA) to resolve the TEDRA action.[4] As part of the NDRA, Doran resigned as trustee and personal representative.

In 2009, Linth, in her individual capacity as a beneficiary, filed a legal malpractice against Gay. Gay moved for summary judgment against Linth, arguing that he did not owe a duty to Linth because she was not his client. The superior court found that Gay did not have a duty to Linth as a nonclient beneficiary and granted Gay's motion. Linth appeals the superior court's order of summary judgment in favor of Gay.

ANALYSIS

Linth argues that the superior court erred by granting Gay's motion for summary judgment because genuine issues of material fact exist about whether Gay owed her a duty as primary beneficiary of the Trust. We disagree.

---

[2] TEDRA provides that the superior court has jurisdiction over the administration of estates, and that it may administer and settle all matters relating to trusts. RCW 11.96A.010, .040(1), (3).

[3] Linth's 2001 petition is not at issue here.

[4] Linth has since moved to vacate the order approving the NDRA, which the superior court denied. In 2010, Linth filed a separate appeal in this court, which is currently pending after being stayed until 2014. No. 41285-3-II.

A.    LEGAL STANDARD

We review a superior court's order granting summary judgment de novo.  *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wn. App. 689, 698-99, 324 P.3d 743, *review denied*, 181 Wn.2d 1008 (2014).  Further, we engage in the same inquiry as the superior court and our review is limited to the precise record before the superior court.  RAP 9.12; *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 436, 333 P.3d 534 (2014).  We resolve all factual disputes and reasonable inferences in favor of the nonmoving party.  *Clark County Fire*, 180 Wn. App. at 698.  "[I]ssues of law are not resolved in either party's favor, but are reviewed de novo."  *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Clark County Fire*, 180 Wn. App. at 698.

"[A] defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case" and (2) the plaintiff fails to demonstrate a genuine issue of fact on an element essential to the plaintiff's case.  *Clark County*, 180 Wn. App. at 699.  "The nonmoving party may not rely on mere allegations, denials, opinions, or conclusory statements" to show a genuine issue of fact on an essential element.  *Parks v. Fink*, 173 Wn. App. 366, 374, 293 P.3d 1275, *review denied,* 177 Wn.2d 1025 (2013).  If the nonmoving party fails to demonstrate the existence of an essential element, then the court should grant summary judgment.  *Washington Fed. Sav. & Loan Ass'n v. McNaughton*, 181 Wn. App. 281, 297, 325 P.3d 383, *review denied*, 181 Wn.2d 1011 (2014).  We may affirm on any grounds established by the pleadings and supported by the record.  *Lane v. Skamania County*, 164 Wn. App. 490, 497, 265 P.3d 156 (2011).

A legal malpractice claim requires:

"(1) [t]he existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred."

*Parks*, 173 Wn. App. at 376 (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992)).

B.    LINTH'S LEGAL MALPRACTICE CLAIM AGAINST GAY

Linth contends that Gay owed her a duty as beneficiary of the Trust. Specifically, Linth claims that Gay owed her a duty during two distinct periods. First, Linth claims that Gay owed her a duty before Plant's death, when he negligently prepared and executed Plant's estate planning documents, including the Trust and the Amendment to the Trust. Second, Linth claims that Gay owed her a duty after Plant's death, when he negligently represented Doran as personal representative and trustee. We disagree.

A threshold question in negligence claims is whether, as a matter of law, the defendant owed the plaintiff a duty of care. *Mita v. Guardsmark, LLC*, 182 Wn. App. 76, 83, 328 P.3d 962 (2014). Generally, only an attorney's client may bring an attorney malpractice claim. *Parks*, 173 Wn. App. at 377. However, in limited circumstances, an attorney may owe a nonclient a duty. *Id*. Whether an attorney owes a nonclient beneficiary a duty is a question of law. *Id.*

1.    Negligence Before Plant's Death: Preparation of Estate Planning Documents

Linth claims that Gay negligently failed to competently draft Plant's estate and trust plans by failing to include the missing attachment to the Amendment to the Trust before Plant died. The question here is whether Gay, as Plant's estate attorney, owed Linth, as a beneficiary, a duty to

properly execute the Trust documents, including a duty to ensure that the Amendment was complete.

Division One of our court addressed an issue similar to the one here and held that an attorney does not owe a duty of care to the prospective beneficiary of a client's estate to promptly execute a will. *Id.* at 368. In *Parks*, the testator, without witnesses or a notary, signed a draft of a second will, which designated the plaintiff as a beneficiary. *Id.* at 369. The attorney did not promptly obtain two witnesses for the testator's signature as required by statute for a valid will. *Id.* at 370. When the attorney finally attempted to have the testator properly execute the second will, the testator was physically unable to do so. *Id.* at 369-70. In the probate proceedings, the plaintiff submitted declarations stating that the testator wanted the plaintiff to be the primary beneficiary of his estate. *Id.* at 371-73. Ultimately, the original will, with no provisions for the plaintiff, was administered over the plaintiff's objections. *Id.* at 373. The plaintiff brought a legal malpractice action against the attorney who prepared the will, arguing that the attorney owed him a duty to promptly execute the second will that named him beneficiary. *Id.* at 367-68. The plaintiff argued that he was deprived of his entitlement to the testator's property because of the attorney's failure to properly execute the testator's will. *Id.* at 373. The *Parks* court held that to impose a duty to prospective beneficiaries to promptly execute a will "would severely compromise the attorney's duty of undivided loyalty to the client and impose an untenable burden on the attorney-client relationship." *Id.* at 368. As the *Parks* court held:

> "Imposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen."

*Id.* at 387-88 (quoting *Krawczyk v. Stingle*, 208 Conn. 239, 246-47, 543 A.2d 733 (1988)).

Linth argues that *Parks* does not apply here because *Parks* was concerned about compromising the attorney's loyalty to the client. Linth claims that there was no need for Gay to be concerned about encouraging or influencing Plant because "by *every* account, she was deeply loved by [Plant] for many different reasons." Br. of Appellant (Linth) at 24. However,

> "[w]hereas a testator and the beneficiary of a will have a mutual interest in ensuring that an attorney drafts the will non-negligently, a prospective beneficiary may be interested in the will's prompt execution, while the testator or testatrix may be interested in having sufficient time to consider and understand his or her estate planning options."

*Parks*, 173 Wn. App. at 388 (quoting *Sisson v. Jankowski*, 148 N.H. 503, 509, 809 A.2d 1265 (2002)). Linth fails to explain, or offer authority for, her assertion that *Parks* does not apply because Plant wanted to provide for her.

The circumstances here closely parallel those in *Parks*.[5] Here, as in *Parks*, the Trust documents were not properly executed before Plant's death. Further, like *Parks*, there is evidence that Plant wanted to provide a life estate for Linth. Because *Parks* controls, we hold that Gay did not owe a duty to Linth, a nonclient beneficiary.[6]

---

[5] Linth asserts that *Parks* is inapplicable because it dealt with a prospective beneficiary and she is an actual beneficiary. She provides no authority to support her assertion that the distinction is consequential. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Therefore, we do not consider this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[6] Linth also asserts, without authority, that the cases cited by Gay discuss the "duty in the context of estate planning generally" but "do not apply to this estate planning setting, which involves the establishment first of an inter vivos irrevocable trust with testamentary provisions" and "where an amendment—whether effective or not—increased the gift to the beneficiary." Br. of Appellant

Linth relies on *In re the Matter of the Guardianship of Karan*, 110 Wn. App. 76, 38 P.3d 396 (2002), to support her claim that Gay owed her a duty despite the absence of an attorney-client relationship. However, *Karan* is factually and legally distinguishable from the present case.

In *Karan*, a three-year-old child's mother hired an attorney to establish a guardianship for her child's estate, which consisted of the child's father's life insurance proceeds. *Id.* at 79. The mother eventually depleted the estate. *Id.* The guardian of the child brought a legal malpractice claim against the mother's attorney, claiming that he failed to comply with the guardianship statute requirements. *Id.* at 79-80. The superior court granted the attorney-defendant's motion for summary judgment, finding that the defendant did not owe a duty of care to the nonclient beneficiary of the guardianship. *Id.* at 80.

Division Three of this court reversed, finding that under the unique circumstances of guardianship, the attorney owed a duty to the child. *Id.* at 79. The court in *Karan* held that while the court is concerned that imposing a duty to nonclient beneficiaries could "create an impossible ethical conflict for lawyers" because beneficiaries and the personal representative of an estate are often in an adversarial relationship, those concerns were inapplicable in the context of a guardianship. *Id.* at 86. The court held that "[t]he obligation to protect the interests of wards in a circumstance such as this does not put lawyers in an ethical bind." *Id.* The *Karan* court noted that the circumstances before it—"a legally incompetent infant ward" in a nonadversarial relationship—were factually distinguishable from the situation involving two competent adults. *Id.* at 84.

---

(Linth) at 18. Because her assertions are not supported by authority, we do not address them. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

The policy concerns present in *Karan* are not present here because Linth and Plant were competent adults. *Id.* at 84. Accordingly, *Karan*'s rationale is inapplicable.

2. Negligence After Plant's Death: Representation of the Personal Representative and Trustee

Linth claims that Gay negligently represented Doran, as the personal representative and trustee, after Plant's death.[7] Linth apparently claims that Gay's duty to Doran included a duty to her as a nonclient beneficiary. We hold that Gay's duty to Doran, as personal representative and trustee, did not include a duty to Linth, a nonclient beneficiary.

In *Trask v. Butler*, the court held that "a duty is not owed from an attorney hired by the personal representative of an estate to the estate or to the estate beneficiaries." 123 Wn.2d 835, 845, 872 P.2d 1080 (1994). The plaintiff in *Trask* was the successor personal representative and a beneficiary of his parents' estate. *Id.* at 839. The plaintiff brought a legal malpractice claim, on his own behalf as a beneficiary, against the former personal representative's attorney, alleging that the attorney negligently advised the former personal representative. The *Trask* court noted:

> In *Stangland v. Brock,* 109 Wn.2d 675, 747 P.2d 464 (1987), we acknowledged the right of an estate beneficiary to bring a cause of action against an attorney under the multi-factor balancing test . . . . In finding a duty to beneficiaries under the multi-factor balancing test, we recognized "if the beneficiaries could not recover for the attorney's alleged negligence, no one could." *Stangland,* at 681, 747 P.2d 454. This rationale is inapplicable to the facts in this case since estate beneficiaries have two preexisting legal procedures to protect their interest in the estate. Foremost, the personal representative owes the beneficiaries of an estate a fiduciary duty to act in the estate's best interest. If the personal representative's conduct falls below this standard, the estate beneficiaries may bring a cause of action against the personal representative for breach of fiduciary duty. By directing estate beneficiaries to file suit against the personal representative for breach of fiduciary duty, we properly place the emphasis of estate decisionmaking upon the correct individual—the personal representative.

---

[7] Linth's discussion of this claim contains no citation to authority or to the record.

*Id.* at 843 (internal citations omitted).

Here, Linth has alternative methods to address her claims—methods that she has utilized. She can, and has, brought a complaint against the trustee and personal representative of the estate. Accordingly, the concerns expressed in *Stangland* and noted in *Trask* do not apply in this case.

In the absence of any authority that Gay owed her a duty or that *Trask* does not control this issue, Linth has not met her burden to establish that Gay owed her a duty as a nonclient beneficiary. Thus, because Linth has not met her burden to establish that Gay owed her a duty as a nonclient beneficiary, summary judgment in favor of Gay was appropriate.

A majority of the panel having determined that only the foregoing portion of the opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

FACTS

In 2011, Jennifer Linth formed the Franklin and Evelyn Plant Green Point Foundation ("the Foundation"). Also in 2011, the Trust and the Foundation moved to intervene in Linth's suit. Gay moved for summary judgment against the Trust and the Foundation, arguing that the statute of limitations had expired. The superior court granted the motion for summary judgment and dismissed the Trust's and the Foundation's claims. We hold that the statute of limitations has expired for the Trust's and the Foundation's claims against Gay. Therefore, we affirm the superior court's order granting summary judgment in favor of Gay.

In July 2008, Linth was appointed trustee of the Trust. On February 2011, Linth formed the Franklin and Evelyn Plant Green Point Foundation ("the Foundation").[8]

_____

[8] Linth was listed as registered agent and as a director.

On October 7, 2011, the Trust and the Foundation moved to intervene in Linth's 2009 legal malpractice claim against Gay. The superior court granted the motion, finding that it could not determine whether the statute of limitations had run or whether Gay owed a duty to the Trust or the Foundation based on the evidence presented.

Gay moved for summary judgment against the Trust and the Foundation, arguing that the statute of limitations expired and that he did not owe either the Trust or the Foundation a duty. The superior court agreed with Gay and granted Gay's motion. The Trust and the Foundation appeal the superior court's order of summary judgment in favor of Gay.[9]

ANALYSIS

A.   LEGAL STANDARD

We review a superior court's order granting summary judgment de novo and engage in the same inquiry as the superior court. *Clark County Fire Dist. No. 5*, 180 Wn. App. at 698-99. Further, in reviewing a motion for summary judgment, our review is limited to the record before the superior court. RAP 9.12; *Vernon*, 183 Wn. App. at 436. We resolve all factual disputes and reasonable inferences in favor of the nonmoving party. *Clark County Fire*, 180 Wn. App. at 698. "[I]ssues of law are not resolved in either party's favor, but are reviewed de novo." *Rice*, 124 Wn.2d at 208. "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Clark County Fire*, 180 Wn. App. at 698.

_____

[9] This court consolidated the Foundation's appeal, cause no. 45590-1-II, with Linth's appeal, under cause no. 45250-2-II.

"[A] defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case" and (2) the plaintiff fails demonstrate a genuine issue of fact on an element essential to the plaintiff's case. *Id.* at 699. "The nonmoving party may not rely on mere allegations, denials, opinions, or conclusory statements" to show a genuine issue of fact on an essential element. *Parks*, 173 Wn. App. at 374. If the nonmoving party fails to demonstrate the existence of an essential element, then the court should grant summary judgment. *Washington Fed.*, 181 Wn. App. at 297. We may affirm on any grounds established by the pleadings and supported by the record. *Lane*, 164 Wn. App. at 497.

A legal malpractice claim requires:

"(1) [t]he existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred."

*Parks*, 173 Wn. App. at 376 (quoting *Hizey*, 119 Wn.2d at 260-61).

B.     THE TRUST AND THE FOUNDATION V. GAY

The Trust and the Foundation contend that the superior court erred by granting Gay's motion for summary judgment because genuine issues of material fact exist about whether the statute of limitations has expired.[10]

---

[10] To the extent that the Trust and the Foundation argue that the superior court improperly considered Gay's reply declaration, we do not address this argument because the Trust and the Foundation fail to offer any citation to authority as required by RAP 10.3(a)(6). *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

Furthermore, the Trust and the Foundation argue that Gay's reply declaration contained legal arguments, new facts, and hearsay. However, the Trust's and the Foundation's claims are belied by the record. There is no evidence that the superior court considered improper legal arguments or that the declaration introduced new facts. Moreover, the statements that the Trust and the Foundation recite as "glaring" examples of hearsay are not out of court statements and thus

1   *Columbia Gorge Audubon Society v. Klickitat County*

In the Trust and the Foundation's motion for reconsideration before the superior court, they argued that under *Columbia Gorge*, once their motion for intervention was granted, the statute of limitations no longer applied. *Columbia Gorge Audubon Soc'y v. Klickitat County*, 98 Wn. App. 618, 989 P.2d 1260 (1999). We disagree.[11]

The Trust and the Foundation mischaracterize *Columbia Gorge*. In *Columbia Gorge*, the appellants, the Confederated Tribes and Bands of the Yakama Indian Nation, filed a timely petition for review of a Klickitat County Board of Adjustment decision. *Columbia Gorge*, 98 Wn. App. at 621. Klickitat County moved to dismiss because the Yakama Nation failed to join indispensable parties. *Id.*. The Yakama Nation voluntarily dismissed its petition. *Id.* The Columbia Gorge Audubon Society also filed a timely petition for review of a Klickitat County Board of Adjustment decision. *Id.* Approximately one month after the allowable period to petition for review, the Yakama Nation filed a motion to intervene in the Audubon Society's action. *Id.* at 622. Klickitat County objected, arguing that the Yakama Nation's motion was untimely because it failed to perfect its own timely appeal. *Id.* The superior court denied the motion, finding that the Yakama Nation's motion for intervention was untimely. Division Three of this court reversed, holding that

---

do not constitute hearsay. Amended Reply Br. of Appellant (Trust and Foundation) at 12; ER 801(c) (hearsay is an out of court statement offered for the truth of the matter asserted).

[11] The Trust and the Foundation did not present their arguments based on *Columbia Gorge* in the summary judgment motion before the superior court. Instead, they raised this argument for the first time in their motion for reconsideration. Generally, a party is not permitted to present new argument based on new authority on a motion for reconsideration. *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005); *JDFJ Corp. v. Int'l Raceway, Inc.*, 97 Wn. App. 1, 7, 970 P.2d 343 (1999). However, it appears that the trial court considered this argument on reconsideration. Therefore, we will address it.

the trial court erred by denying the appellant's motion for intervention, despite its untimeliness, because in part, the "Yakama Nation is not seeking damages. So here, win or lose, the outcome" is the same, regardless of intervention. *Id.* at 628.

*Columbia Gorge* is factually and procedurally distinguishable. Here, after the statute of limitations had expired for claims to be brought against Gay, the Trust and the Foundation intervened in Linth's action. But, Linth's action was timely only because of Linth and Gay's tolling agreement. Without Linth and Gay's tolling agreement, Linth's action also would have been barred by the statute of limitations. Significantly, the Trust and the Foundation were not included in or party to the tolling agreement. Those not party to the agreement may not later seek intervention as a means to benefit from the terms of the agreement. *See Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 342-43, 831 P.2d 724 (1992) (holding that a non-party to a contract cannot claim benefits under the contract). Accordingly, *Columbia Gorge* does not apply to the facts of this case.

2.      The Trust's Claims

The Trust argues that the superior court improperly granted Gay's motions for summary judgment because genuine issues of material fact exist about whether the statute of limitations has expired. Because the Trust fails to cite to authority to support its claims or demonstrate that any genuine issue of material fact exist, we disagree.[12]

---

[12] The Trust and the Foundation do not offer argument or authority regarding Gay's duty. For the purposes of this opinion, we assume without deciding that Gay owed it a duty.

a. Statute of limitations claim

The statute of limitations for attorney malpractice action is three years. RCW 4.16.080(3); *Hipple v. McFadden*, 161 Wn. App. 550, 557, 255 P.3d 730, *review denied*, 172 Wn.2d 1009 (2011). Whether the statute of limitations has expired is a legal question, but the underlying circumstances that give rise to the action are questions of fact. *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). The statute of limitations on an action begins to run when the cause of action accrues, measured by when the plaintiff has a right to seek relief. *Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C.*, 109 Wn. App. 655, 659, 37 P.3d 309 (2001). "[W]hen reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 603, 123 P.3d 465, *review denied*, 155 Wn.2d 1012 (2005).

Washington courts apply the "discovery rule," which provides that the statute of limitations begins to run when the client discovers, or exercising due diligence, should have discovered, the facts that give rise to the cause of action. *Janicki*, 109 Wn. App. at 659. The discovery rule is also applied where the defendant fraudulently conceals material facts from the plaintiff. *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163, *review denied*, 132 Wn.2d 1008 (1997). Under the discovery rule, "[t]he plaintiff bears the burden of proving that the facts constituting the claim were not and could not have been discovered by due diligence within the applicable limitations period." *Clare*, 129 Wn. App. at 603.

However, the date the plaintiff discovers facts giving rise to a malpractice claim is not dispositive. The "continuous representation" rule tolls the statute of limitations "during the lawyer's representation of the client in the *same matter* from which the malpractice claim arose."

16

*Janicki*, 109 Wn. App. at 663-64; *Hipple*, 161 Wn. App. at 557. Accordingly, even if the plaintiff discovers facts giving rise to a malpractice claim, but the attorney continues to represent the plaintiff, the statute of limitations is tolled. *See Hipple*, 161 Wn. App. at 558. Generally, the determinative event for the continuous representation rule is termination of the representation of the matter giving rise to the malpractice claim. *Id.* at 558-59 ("The inquiry is not whether an attorney-client relationship ended but when the representation of the specific subject matter concluded." Termination can be implied from circumstantial evidence and does not require counsel to formally withdraw. *Id.* at 558. "As there is no bright-line rule for determining when representation ends, particular circumstances most often present an issue of fact." *Id.* at 558.

      a.     The "discovery rule"

In Gay's motion for summary judgment, he claimed that the statute of limitations had expired because the Trust was aware, or should have been aware, of any facts giving rise to a malpractice claim in 2000 or 2001.[13] The Trust contends that "[t]his action was brought within three years of the disclosure and release of *some of* the documents provided to Ms. Linth, but not all, namely those withheld under a dubious claim of attorney-client privilege." Amended Br. of Appellant (Trust and Foundation) at 34, n.14.

On summary judgment, the nonmoving party cannot rely on "mere speculative and argumentative assertions." *Adams v. King County*, 164 Wn.2d 640, 647, 192 P.3d 891 (2008). In asserting the discovery rule, the Trust has the burden to prove that the facts giving rise to its claim

---

[13] In Gay's motion for summary judgment, he asserted that the statute of limitations began to run on either August 22, 2000, or January 1, 2001, based on his alleged negligent drafting. Alternatively, Gay argued that the statute of limitations began to run in 2004, when attorney S. Brooke Taylor replaced him "as attorney for the trust and for [Doran], the trustee." CP at 351.

"were not and could not have been discovered by due diligence within the applicable limitations period." *Clare*, 129 Wn. App. at 603. The Trust had the burden to come forward with some evidence that Gay concealed information giving rise to the malpractice claim. *See Clare*, 129 Wn. App. at 603; *see also Crisman*, 85 Wn. App. at 20.

Linth's declaration, in her capacity as trustee, states that she was appointed trustee in 2008. Linth, in her capacity as trustee, claims that in 2008, the Trust's attorney shared documents with her, and in those documents, she discovered information related to Gay's alleged malpractice in October 2008.[14] Aside from bald assertions, the Trust did not provide any evidence that Gay wrongfully withheld or concealed documents, or otherwise prevented Linth, as trustee, or the former trustees, from discovering the documents. Moreover, the Trust did not provide any evidence that a trustee could not have discovered the facts giving rise to the cause of action until 2008.

The Trust has provided no authority or support for its claim that the statute of limitations should be tolled under the discovery rule because Linth, as trustee, first saw documents in 2008 when she was appointed trustee. Here, and before the superior court, the Trust has merely stated that it discovered documents in 2008. But, the Trust has not demonstrated how these documents

---

[14] Gay argued that the statute of limitations began to run when Doran, as trustee, became aware of facts giving rise to a claim—not when Linth, as the second successor trustee to Doran—discovered the facts giving rise to a malpractice claim. The fact that Linth had access to the documents because she was trustee, and that the Trust's attorney had access to the documents, suggests that the former trustees also had access prior to 2008. Logically, if the Trust is correct that the statute of limitations began to run each time a new trustee was appointed, attorneys would be perpetually at risk of new malpractice actions each time a new trustee was appointed, which would defeat the purpose of the statute of limitations.

gave rise to its claim, or that it did not and could not have discovered the information giving rise to its claim prior to 2008.

The Trust asserts that Gay had a conflict of interest when he advised the trustee in matters related to Gay's own legal work.[15] The Trust argues that the statute of limitations was tolled because Gay concealed that conflict.[16] However, the Trust does not argue that Gay concealed his conflicts of interest from the Trust—rather, it argues that Gay concealed his conflicts of interest from the Trust beneficiaries. Furthermore, the Trust does not argue that Gay's concealment from the Trust beneficiaries prevented the Trust from discovering the facts giving rise to the malpractice action. Even assuming that Gay intentionally failed to disclose conflicts of interest to the Trust beneficiaries, the Trust does not argue or demonstrate that it did not and could not discover facts giving rise to its malpractice action until 2008. Accordingly, the Trust's argument that Gay's alleged concealment of conflicts of interest tolled the statute of limitations fails.

The Trust has not met its burden to demonstrate that because of Gay's actions, it did not and could not discover the facts giving rise to its claim within the applicable limitations period.

---

[15] Much of the Trust's supporting documents are dated 2000 and 2001—the Trust does not offer explanation about which documents it first discovered in 2008. Furthermore, the Trust's own supporting documents suggest that it had access to the information that it alleges Gay withheld. It relies on requests for production to Doran, which, in relevant part, states that although Doran objected on the basis of attorney-client privilege, *respondent's counsel [Gay] previously provided petitioners with the complete legal memorandum by e-mail attachment on October 1, 2001.* CP at 414 (emphasis added).

[16] To the extent that the Trust argues that the statute of limitations is tolled because Gay prevented Doran from forming the Foundation in light of Gay's realization of a potential malpractice claim, there is no evidence in the record to support the argument to create a genuine issue of material fact.

Accordingly, the discovery rule does not operate to toll the statute of limitations. *Clare*, 129 Wn. App. at 603.

### b.  Continuous representation

Here, Gay was retained by Plant in 2000. Gay then represented Doran, in Doran's capacity as trustee. At some point in 2002, Taylor was brought in to assist Gay. In 2004, Taylor replaced Gay as counsel for the Trust and trustee.[17] In 2005, Doran resigned from his role as trustee and personal representative. There is no evidence or claim that Gay represented any trustee other than Doran or that he was involved when Doran was not trustee. There also is no evidence in the record that Gay was involved in the Trust affairs after 2004.

Assuming without deciding that Gay represented the Trust and thereby owed it a duty, Gay's representation ended in 2004 when Taylor replaced Gay as counsel for the Trust. Therefore, under the continuous representation rule, the statute of limitations began to run in 2004 and would have expired in 2007. Even if we assume without deciding that Gay represented the Trust until Doran resigned as trustee in 2005, the statute of limitations would have begun to run in 2005 and expired in 2008. *See* RCW 4.16.080(3); *Hipple*, 161 Wn. App. at 557-58. The Trust filed its action in 2011. Accordingly, the Trust's claims are barred by the statute of limitations.

Thus, the Trust, by relying on argumentative assertions, does not meet its burden to survive summary judgment because it provided no evidence or authority demonstrating a genuine issue of material fact. Therefore, we affirm the superior court's order granting summary judgment.

---

[17] To the extent that the Trust argues that a formal withdrawal from representation is necessary, the claim fails. *Hipple*, 161 Wn. App. at 558 (holding that "de facto termination can be implied from circumstantial evidence").

3.      The Foundation's claims

The Foundation argues that Gay owed it a duty and that the statute of limitations was tolled until it was created. We disagree.

The Foundation was created in 2011. Gay was involved in Plant's affairs until 2004. The Foundation has offered no authority to support its claim that that the scope of Gay's duty to his former clients from 2000-2004 extends to a foundation formed in 2011, or that the statute of limitations for a legal malpractice claim should be tolled from the time Gay ended his involvement in 2004 until the Foundation was formed in 2011. Therefore, in the absence of authority, we reject the Foundation's argument that Gay owed the Foundation a duty and that the statute of limitations tolled for the Foundation until it was created in 2011. RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809.

We affirm the superior court's orders granting summary judgment and dismissing all claims against Gay.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.

21